UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 1:08CR 99 CAS |
| ) | |
| RONDALL L. ROGERS, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Defendant Rondall L. Rogers is charged with two other defendants, his brother, Anthony L. Rogers, and a friend, Joshua Lee Dennis, in a one-count indictment returned by the Grand Jury for the Southeastern Division of the Eastern District of Missouri. The indictment charges that on May 6, 2008, the three named defendants maliciously, by means of fire, severely damaged and attempted to destroy a manufacturing building and other personal property, including certain office equipment and furniture located at 2535 Rose Parkway, Sikeston, Missouri, used by Construction Trailer Specialists, Inc., a business engaged in an activity affecting interstate commerce. A crate of scrap aluminum was stolen from Construction Trailer Specialists on May 6, 2008, the same night as the alleged arson.

Defendant Rondall Rogers filed his Motion to Suppress an Out-of-Court Identification (Document #53). The government filed its response (Document #57). An evidentiary hearing was held which was followed by memoranda filed by the defendant and the government. The parties' memoranda were very well done and have provided significant assistance to the court.

## Factual Background

Law enforcement officers developed information that a Joshua Dennis was involved in the fire. Joshua Dennis was brought in for questioning and he eventually agreed to cooperate with investigators. During his cooperation, Joshua Dennis incriminated Anthony Rogers and Rondall Rogers. Dennis told the investigators that the Rogers brothers would have taken their scrap metal to Sides Metal Recycling in Cape Girardeau. Sides Metal Recycling is a business that purchases recyclable items from individuals and other businesses.

David Diveley, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, had received a request to assist the Sikeston, Missouri, Department of Public Safety because there had been a fire at a business that affected interstate commerce.

On June 20, 2008, Agent Diveley went to Sides Metal Recycling. Diveley first contacted a secretary and advised her that he was looking for someone who could assist him with identifying some people who may or may not have brought some scrap aluminum to the business. The secretary asked David Moore to meet Agent Diveley in the office. Diveley asked Moore if he would recognize anybody in some photo line-ups that Diveley had. The line-ups had been prepared by an investigative analyst with the ATF in ST. Louis. There were three different line-ups, each containing six pictures. The first photo line-up contained a picture of Anthony Rogers. The second line-up contained a picture of Rondall Rogers. The third photo line-up contained a picture of Joshua Dennis.

Diveley laid the first photo line-up down. Mr. Moore immediately pointed to the picture of Anthony Rogers and said, "That's Anthony Rogers." (Tr. 14). He initialed below the picture. Alongside his initials Mr. Moore wrote the date, 6/20/08. That photo line-up was introduced at the evidentiary hearing as Government's Exhibit #1.

Diveley then laid down the second photo line-up and, according to Diveley, "fairly quickly" Mr. Moore identified the picture whom Agent Diveley knew to be Rondall Rogers and stated, "This guy comes in here with Anthony Rogers; I don't know who he is." (Tr. 15). Moore initialed next to the picture. This photo line-up was introduced at the evidentiary hearing as Government's Exhibit #2.

Diveley testified that he then laid down what was identified as Government's Exhibit #3 at the evidentiary hearing. Moore studied the line-up a little longer and finally said that he recognized one of the pictures and placed his initials below one of the pictures. Moore said the person looked familiar, but he did not know who that person was. Moore did not point to the picture of Joshua Dennis which was included in the six photos in Exhibit #3. Moore said he recognized the people in Exhibits #1 and #2 from bringing scrap aluminum metal products into the business. (Tr. 16).

Diveley asked Moore if Sides Metal Recycling kept records of who brought aluminum or any metal into the business. Moore stated their policy as of May, 2008, and since then, has been that anyone who brought metal into the business other than aluminum cans would have to provide a photo ID. Diveley then asked to review the receipts from May 6, 2008. Moore brought out an envelope which was from that particular date, and Diveley started going through the records and found Anthony Rogers's identification and a receipt indicating that Sides paid Anthony Rogers for some aluminum. Diveley testified that without any questions from him, Moore indicated that the type of aluminum that Anthony Rogers brought in that day was the same type that Construction Trailer Specialists, also known as CTS, brings in. (Tr. 19).

As noted earlier, Rondall L. Rogers, Anthony L. Rogers and Joshua Lee Dennis were all indicted by the Grand Jury for the Southeastern Division of the Eastern District of Missouri on July

17, 2008.

**The Law**

The parties agree that the test to be used in evaluating the reliability of identification procedures was adopted by the United States Supreme Court in Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243 (1977). Reliability is the linchpin in determining the admissibility of identification testimony and if a pretrial identification procedure should be found to be unduly suggestive, the central question remains whether, under the totality of the circumstances, the identification was reliable despite any suggestive or inappropriate pretrial identification techniques. Drawing from the cases cited below, the parties list factors to be used in determining the reliability of identification testimony. They are: (1) the opportunity of a witness to view the criminal at the time of the offense; (2) the witness's degree of attention; (3) the accuracy of any prior description by the witness; (4) the level of certainty demonstrated by the confrontation; and (5) the time between the occurrence of the crime and the confrontation. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967 (1967); Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375 (1972); United States v. Daily, 488 F.3d 796, 803 (8th Cir. 2007); United States v. Martin, 391 F.3d 949, 952 (8th Cir. 2005).

**Discussion**

The defendant does not maintain that the photo line-ups were themselves unduly suggestive. That is not the defendant's complaint. The defendant argues that the manner in which the photo line-ups were presented is what was unduly suggestive. The defendant's position is set out in his Motion to Suppress an Out of Court Identification (Document #53):

> This photographic line-up was unconstitutionally suggestive in that Moore was already alerted to the inescapable conclusion that law enforcement (Agent Diveley) was investigating Rondall Rogers and Anthony Rogers. Agent Diveley alerted Moore

that he was investigating Anthony Rogers and Rondall Rogers in that the pallet of aluminum that Agent Diveley expressed an interest in at Sides Metal Recycling as possibly being stolen was allegedly sold to Sides by Anthony Rogers (Rondall Rogers' brother). Sides (and in turn Sides' employee Moore) was aware that Anthony Rogers sold the pallet of aluminum in question to Sides in that when the pallet of aluminum was sold, Sides obtained a copy of the seller's Missouri Driver's license and kept such license on file. The license on file associated with the pallet of aluminum in question at Sides was the driver's license of Anthony Rogers.

(Motion to Suppress an Out of Court Identification, p. 2).

The government disputes defendant's assertion set out above of why the photographic line-ups were unconstitutionally suggestive. As the court noted earlier, the defendant's objection is to the manner in which the line-ups were presented and the circumstances surrounding that presentation. Taking in order defendant's allegations set out above: the government denies that Moore was already alerted to the conclusion that law enforcement (Agent Diveley) was investigating Rondall Rogers and Anthony Rogers; Agent Diveley did not alert Moore that he was investigating Anthony Rogers and Rondall Rogers in that the pallet of aluminum that Agent Diveley expressed an interest in at Sides Metal Recycling as possibly being stolen was allegedly sold to Sides by Anthony Rogers (Rondall Rogers' brother); Diveley said nothing about any pallet of aluminum. In fact, before talking with Moore, Diveley had not inspected the yard, did not know anything about a "pallet" of aluminum and did not go out into the yard at all during the visit to Sides (Tr. 23); Sides (and in turn Sides' employee Moore as set out in that summary of defendant's position) was not aware that Anthony Rogers sold the pallet of aluminum in question to Sides before the photographic line-up was displayed to Mr. Moore.

The evidence supports the government's position.

Agent Diveley testified that he went to Sides Metal Recycling looking for someone who could assist him in identifying people who may or may not have brought some scrap aluminum to the business. A secretary referred him to David Moore. Diveley testified that he laid the first photo line-up down in front of Mr. Moore and asked Moore if he recognized anybody in the line-up. Moore immediately pointed to the picture of Anthony Rogers and said, "That's Anthony Rogers." Diveley testified that prior to asking Moore that question, Diveley did not tell anyone outside or inside the office, including Moore, what had happened with regard to the alleged crime that he was investigating; Diveley did not say anything about stealing aluminum; Diveley did not tell Moore anything about the individuals who were suspects in the crime. He also did not investigate the yard or do anything outside that would have suggested that he was looking for something in particular. Diveley's non-disclosure about who or what he was checking on applied to the display of all three photo line-ups.

When shown Government's Exhibit #2, the line-up containing the picture of Rondall Rogers, Moore did not know who the person was but said, "This guy comes in here with Anthony Rogers; I don't know who he is."

Besides showing his identification to the secretary and David Moore, the only thing Diveley said to Mr. Moore prior to showing the photographic line-ups was to ask Moore if he would look at some line-ups and see if he recognized anybody. Moore then made the identifications.

David Moore testified at the evidentiary hearing that he had never met Agent Diveley before June 20, 2008, the date he was shown the photographic line-up. Moore testified that he was asked to come into the office by the secretary to speak to a man looking for some scrap that may have possibly come in. Moore testified that Diveley told him Diveley's name and then showed the photo

line-ups and asked Moore if he recognized anybody in the photos. Moore testified that he picked out the three people, one each in the line-ups, whom he recognized. He stated that Diveley did not provide any names that Diveley was looking for nor did he tell Moore what crimes he was investigating. Diveley did not say anything about the victims of any crimes, whether he had arrested someone or was attempting to arrest a particular person. Diveley did not indicate whether he was looking for more than one person. Diveley did not tell Moore he should recognize a person or suggest that anyone had been arrested. (Tr. 33-34).

When he was cross-examined, Moore stated that he was never aware that there had been a theft at Construction Trailer Specialists, nor had he ever talked to law enforcement regarding the pallet of aluminum prior to June 20th. Moore testified that he did not know if the scrap metal was stolen or not when he was asked to meet with Agent Diveley about scrap metal. Moore testified that Diveley did not tell him that Diveley was at Sides investigating something concerning scrap metal. Diveley just said he was at Sides to see if there was any scrap metal that may have come in.

Contrary to the assertions of the defendant, the court finds that when Agent Diveley presented the photo line-ups to David Moore, Moore had not been alerted to the conclusion that law enforcement (Agent Diveley) was investigating Rondall Rogers and Anthony Rogers. It is not correct that Agent Diveley alerted Moore that Diveley was investigating Anthony Rogers and Rondall Rogers, in that the pallet of aluminum that Agent Diveley expressed an interest in at Sides Metal Recycling as possibly being stolen was allegedly sold to Sides by Anthony Rogers (Rondall Rogers's brother). The fact is that Agent Diveley testified that he never looked at the aluminum at the Sides

metal yard.[1]  Since Diveley did not go out into the yard to see any pallet of aluminum, he could not have expressed an interest in a pallet of aluminum as charged by the defendant. The defendant refers a number of times to "the pallet of aluminum in question." Neither Agent Diveley nor David Moore brought up a pallet of aluminum in their testimony.

The defendant cites United States v. Lewin, 900 F.2d 145, 149 (8th Cir. 1990), in which the district court found that the out-of-court identification had been conducted in an impermissibly suggestive manner because before viewing the photo spread, the undercover officer (the witness) was informed that the photo spread contained the photographs of individuals who had been arrested. Although the district court found that the photo spread was conducted in an impermissibly suggestive manner because of what the undercover officer was told, under the totality of the circumstances of that case, the district court found that the out-of-court and in-court identifications of the defendant were reliable.

Although the defendant maintains that Agent Diveley's presentation of the photo spreads was tainted, David Moore's identification of Anthony Rogers and the person who frequently came into Sides with Anthony Rogers was not preceded by any statement by Agent Diveley that the individuals in the photo line-ups had been arrested or even that a crime had been committed. The Lewin case does not provide any support for the defendant's contention that the manner in which the photo spreads were presented was impermissibly suggestive.

The court finds that Agent Diveley's presentation of the photo spreads to David Moore was

---

[1] Q "Did you investigate the yard or do anything outside that would suggest that you were looking for something in particular?"
A "No." (Tr. 13).
Q "Did you go out and inspect the yard of Sides Metal Recycling?"
A "No, I did not." (Tr. 23).

not impermissibly suggestive. In fact, Agent Diveley was very careful to give no suggestion to Mr. Moore that there had been a robbery, who the victim was, that there were suspects or that any suspect had been arrested. He merely asked if he could speak with someone who would know if some scrap aluminum had been brought in. When placing the photo spreads before Mr. Moore, Diveley asked simply if Moore recognized anyone in the photo spreads.

Defendant Rondall Rogers's motion requesting that any evidence regarding the out-of-court identification of Anthony Rogers and Rondall Rogers be suppressed as impermissibly suggestive should be denied. In the same way, Rondall Rogers's request that any possible in-court identification of Anthony Rogers and Rondall Rogers by David Moore be suppressed as fruit of an impermissibly suggestive photographic line-up should be denied.

### **Reliability**

Even had the photo line-up presented to David Moore been impermissibly suggestive, evidence of the identification should not have been suppressed because the identification was reliable and the result of an independent basis for identification of Anthony Rogers and Rondall Rogers. United States v. Crews, 445 U.S. 463, 472-3 (1980); United States v. Lewin, 900 F.2d 145, 149 (8th Cir. 1990); United States v. Alden, 576 F.2d 772, 778 (8th Cir. 1978) cert. denied.

The testimony adduced at the evidentiary hearing established the independent basis for David Moore's reliability in his recognizing and identifying both Anthony Rogers and Rondall Rogers. When the photo spread containing Anthony Rogers's picture was displayed, Mr. Moore "immediately" pointed to the picture of Anthony Rogers and said, "That's Anthony Rogers." When shown Exhibit #2 containing the photograph of Rondall Rogers, Moore picked out Rondall Rogers saying, "This guy comes in here with Anthony Rogers; I don't know who he is." Moore's honesty

in admitting he did not know the name of Rondall Rogers is a further indication of his truthfulness and reliability. Finally, in connection with Government's Exhibit #3, which photo spread contained a picture of co-defendant Joshua Dennis, the fact that David Moore identified someone who was familiar to him but who was not Dennis is a further indication that David Moore was not coached on the identifications he should make.

With respect to Anthony Rogers, Moore testified, "As soon as he laid the picture down, I pointed him out, and, you know, I knew him by name." (Tr. 32).

Although he did not know Rondall Rogers's name, Mr. Moore testified about Exhibit #2 and Rondall Rogers's picture, "I've seen the gentleman with Anthony Rogers before." (Tr. 35). He testified that he had seen the two come into work many times. When he was asked on cross-examination how many times he had seen Anthony Rogers come in, David Moore answered, "Umm, I couldn't even give you a number. A lot." (Tr. 44). When asked what a lot meant, Moore responded, "... I mean a bunch of times within the last three years." Moore testified that Anthony Rogers came in more than twenty times within the past three years, and when he was asked if Anthony had come in almost every other week, Moore responded, "Umm, yeah." (Tr. 44). He stated that he talked to Anthony Rogers when he came in. Moore further testified that he had seen "the gentleman over there" (indicating Rondall Rogers in court) come in with Anthony Rogers several times. Finally, when he was asked who mostly comes in with him, Moore responded, "The gentleman over there," indicating Rondall Rogers. (Tr. 45).

Mr. Moore explained that when Agent Diveley presented the photographic line-up, he had seen Anthony Rogers's picture before because he had seen Anthony Rogers's driver's license many times. (Tr. 48).

As noted, the testimony presented at the evidentiary hearing established David Moore's independent basis for recognition of both Anthony Rogers and Rondall Rogers.

A further demonstration of the reliability of David Moore's recognition of Anthony Rogers is evidenced by applying the factors indicating reliability listed by the Supreme Court cases of Stovall v. Denno and Neil v. Biggers (See page 4 above of this report). The court finds: (1) Moore had the opportunity to observe Anthony Rogers on June 20, 2008, when his associate, Brian Beerick, accepted the aluminum from Anthony (Tr. 46); (2) David Moore was paying attention because he testified that he could see Anthony Rogers and Brian talking; (3) Moore said he had seen Anthony's driver's license many times (Tr. 48) and Anthony himself almost every other week (Tr. 44), both of which provided prior accurate descriptions of Anthony Rogers; (4) Moore "immediately" picked out Anthony and "fairly quickly" identified Rondall (Tr. 15) as the person who mostly came in with Anthony (Tr. 45), although Moore did not know Rondall's name (Tr. 15), demonstrating a significant level of certainty; (5) the time lapse between the delivery of the scrap aluminum by Anthony Rogers (May 6, 2008) and David Moore's recognition of Anthony Rogers's picture (June 20, 2008) was relatively short.

As noted by the government in its memoranda, Rondall Rogers has no standing to object to the identification of Anthony Rogers even had there been an impermissibly suggestive identification of Anthony Rogers, constitutional rights being personal to each individual himself.

**IT IS, THEREFORE, RECOMMENDED** that the defendant's Motion to Suppress an Out-of-Court Identification (Document #53) requesting the suppression of the out-of-court identification of Anthony Rogers and Rondall Rogers on June 20, 2008, and any possible in-court identification of Anthony Rogers and Rondall Rogers by Moore be denied**.**

The parties are advised that they have eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990).

/s/ Lewis M. Blanton
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE

Dated this 25th day of November, 2008.